Mr. Chief Justice Sharkey
delivered the following opinion.
I concur in reversing the judgment, because I consider the main question in this case as fully settled by the decision in the case of the Commercial Bank of Manchester v. Nolan, 7 Howard, 508. And when I say that I concur in it as a settled question, I do not wish to be understood as intimating a disapprobation of the decision referred to. Nor is my concurrence based *84 upon any recent investigation of the question involved. I have ceased to look upon it as a question open for investigation since the decision in the case of the Bank of Manchester v. Nolan; and I avail myself of this occasion to say a few words in explanation of the reasons which seem imperatively to require my acquiescence.
The case of Snodgrass v. The Planters Bank, was the first to bring the question of usury before this court. It was my misfortune then to differ in opinion from a majority-of the court, and I gave the best reasons which seemed to be available in support of my conclusion. Although the majority of the court did not decide fully that the effect of usury was to avoid the contract, because the contract was held not to be usurious, yet I did intimate an opinion that such a contract was void. My principal effort, however, was to show that the contract was tainted with usury; but the majority of the court thought otherwise, and of course were not led to consider of the effect of that which they thought did not exist. I feel satisfied, however, that had they found it necessary to decide that question, the decision would have been that the contract was valid except as to the interest, and I think such was the general impression produced by the opinion. The case of the Bank of Manchester v. Nolan, presented the same question, in a somewhat modified shape, a second time to this court. The point was very fully and ably argued on both sides. I am free to confess that the inclination of my mind was still that the contract was void ; but finding that I could concur in the judgment on the ground that the contract was not usurious, I was content to rest my judgment o n this ground, and did not investigate the question as to the effect of usury. But, at the earnest solicitation of counsel, the majority of the court did very fully and carefully examine that question, and came to the conclusion that usury did not avoid the contract. I watched with great interest the laborious investigation which was bestowed upon the subject, and heard with pleasure, in a lucid expose of judicial learning and reasoning, the result of that investigation. That decision bears its own commendation, and might well induce me to dis *85 trust any opinion of nay own on the subject, although it had been formed from more deliberation than I have bestowed on this question. After the question has been thus settled, I feel that it is my duty so to regard it, whenever it may arise, and I do so with as much freedom and pleasure as if I had fully united in the.opinion of the court in all the points. I think that the opinion of a majority of the court on questions well considered, is as obligatory and conclusive as if it had been unanimous, and the importance of adhering to decisions is manifest for many reasons. It is the duty of this court to settle the construction of laws in their application to the rights of individuals, and the community should be able to look with a fixed confidence to the decisions we may give as the true and permanent expositions of the law. If we vacillate, we unsettle the law instead of settling it, and suitors will start out as adventurers, to speculate on the chances of a favorable result. The example of a wavering mind in one instance, is calculated to induce a belief or a hope that the same thing may occur again, which, besides opening the door to increased and endless litigation, is calculated to shake the confidence of the public in the tribunals of the country, and to bring the law into disrespect. To persist in adhering to a-dissenting opinion may also be productive of pernicious consequences. The organization of this court may be partially changed every two years, and totally changed every six years; these changes may soon bring about a concurrence with the minority of the court, and a consequent change of decisions. If we wish to establish precedents for others, we should not set the example of departing from them ourselves. Cases, it is true, may arise in which I shall feel willing to change former decisions; cases, for instance, which show a want of due consideration and investigation, when the change can produce no injury, or when I think the decision is erroneous and mischievous in its consequences ; but when a question has been so well considered as this was in the case of the Bank of Manchester v. Nolan, it should be considered as finally at rest. Ne movete quieta is a maxim of much merit, and 1 cannot better recommend it to others than by adopting it as a rule for my own government.